IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION


TRAVIS REDDIX                                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 4:23-CV-164-DAS

COMMISSIONER OF SOCIAL SECURITY                                  DEFENDANT


**MEMORANDUM OPINION AND JUDGMENT**


This cause is before the court on the plaintiff's complaint for judicial review of an

unfavorable final decision by the Commissioner of the Social Security Administration regarding

his application for supplemental security income.  The parties have consented to entry of final

judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with

any appeal to the Fifth Circuit Court of Appeals.  The court, having reviewed the administrative

record, the briefs of the parties, the applicable law and having heard and considered oral

argument, finds the decision of the Commissioner of Social Security should be affirmed.

**FACTS**

The plaintiff, Travis Reddix, filed for benefits on August 9, 2021, alleging onset of

disability commencing on November 22, 2020.  The Social Security Administration denied the

claim initially and on reconsideration.  Following the hearing, the ALJ issued an unfavorable

decision. (Dkt. 9 p. 14-24).[1] The Appeals Council denied the request for review, and this timely

appeal followed.

---

[1] All references are to the administrative record using the court's numbering system, rather than the
administrative numbering.

The ALJ found Reddix had the following severe impairments: impairments of degenerative joint disease, degenerative disc disease of the lumbar spine, and anxiety. The ALJ found he retained the residual functional capacity (RFC) to perform a limited range of light work. Additional restrictions included only occasional stooping, kneeling, crouching, crawling, and climbing. Reddix could only tolerate occasional interaction with the public, coworkers, and supervisors. The ALJ found Reddix had moderate limitations in interacting with others but only mild limitations in other areas of functioning.

The ALJ found Reddix cannot perform any of his past relevant work as a greeter, package assembler, and truckload checker. The claimant was a younger individual at all relevant times and has at least a high school education. Based on the testimony of the vocational expert, the ALJ found Reddix could do other jobs that exist in substantial numbers in the national economy. He can do unskilled, light level exertion jobs including, laundry worker with 103,000 jobs; housekeeper with 317,000 jobs, and inspector with 117, 000 jobs. The ALJ, therefore, determined Reddix was not disabled.

## ANALYSIS

The plaintiff argues the ALJ erred in his assessment of the favorable opinions by Pamela Buck, Ph.D., a consulting examiner, and by Wyconda Thomas, a treating nurse practitioner. Reddix argues the ALJ found the opinions unpersuasive but did not provide an adequate explanation of the supportability and consistency of these opinions.

Since 2017 Social Security regulations do not provide for "any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those [of a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The current regulations require ALJs to determine the persuasiveness of experts' opinions based on

five factors: 1) supportability; 2) consistency; 3) the source's relationship with the patient, 4) the

source's medical specialty; and 5) a catchall provision for "other factors that tend to support or

contradict" the opinion. 20 C.F.R. § 404.1520c(b)(2). But the regulations only require the ALJs

to discuss the supportability and consistency of the expert opinions in their decisions. *Id.*

The supportability of a medical opinion "increases as the relevance of the objective

medical evidence and explanations presented by the medical source increases." *Vellone v. Saul*,

No. 1:20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and*

*recommendation adopted Vellone on behalf of Vellone v. Saul*, No. 20-CV-261, 2021 WL

2801138 (S.D.N.Y. July 6, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)). The consistency

evaluation is "an all-encompassing inquiry focused on how well a medical source is supported,

or not supported, by the entire record." *Clay v. Kijakazi*, No. 4:21-CV-149-SA-DAS, 2022 WL

13989015, at *3 (N.D. Miss. Oct. 21, 2022) (quoting 20 C.F.R. § 404.1520c(c)(1) Revisions to

Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844, 5853, 82 FR 5844-01, 5853).

Here the pertinent question is what constitutes an adequate explanation of the

persuasiveness findings.  It is critical that the ALJ's decisions provide enough information for

the courts "to conduct a meaningful appellate review of the decision-making process." *Clay*,

2022 WL 13989015, at *3.  The courts need to know what evidence was considered and why a

particular result was reached in the decision-making process.  Nor is it sufficient simply to pay

lip service to the regulatory requirements without providing any meaningful detail. *See, e.g.,*

*Howard D. v. Saul*, No. 5:19-CV-01615 (BKS), 2021 WL 1152834, at *12 (N.D.N.Y. Mar. 26,

2021).  No decision may leave the court to speculate about the judge's reasoning to ask the court

to engage in *post hoc* rationalization. *Id.* This duty of explanation is mandated not only by

regulation but also by statute.  In every decision, unless fully favorable, the Social Security

3

Administration must provide a "statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons." 42 U.S.C. § 405 (b)(1).

"ALJ does not need to comment on every piece of evidence, but is only required to build *an accurate and logical bridge between the evidence and the final determination. Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)(emphasis added) (citing *Glomski v. Massanari*, 172 F. Supp. 2d 1079, 1082, 77 (E.D. Wis. 2001). Case law has accumulated in the last several years providing substantial guidance on how much explanation is required. *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted,* No. 1:20-CV-166-HSO-RPM, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021) (citing *Ramirez v. Saul*, No. SA-20-CV-00457-ESC, 2021 WL 2269473, at *6 (W.D. Tex. June 3, 2021))(A recitation of the facts without providing any reasoning for persuasiveness finding is not sufficient); *Todd v. Comm'r of Soc. Sec.*, No. 3:20-CV-1374, 2021 WL 2535580, at *9 (N.D. Ohio June 3, 2021), *report and recommendation adopted,* No. 3:20 CV 1374, 2021 WL 2530846 (N.D. Ohio June 21, 2021) (The "terse reasoning" for rejecting the treating doctor's opinion was not sufficient because the ALJ did not point to any record evidence that was inconsistent with the opinion, and attributed the favorability of the opinion, without evidence, to physician sympathy or desire to avoid conflict with the patient.); *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489 (S.D. Miss. 2021) (The ALJ erred in rejecting a treating provider's favorable opinion based on normal exam findings not relevant to the conditions that were allegedly disabling, and ignoring remarkable, abnormal findings related to the claimed disabling conditions.)

4

If an ALJ fails adequately to explain a persuasiveness decision, the existence of medical evidence that could support the decision does not necessarily render the error harmless. If the medical opinions at issue are neither peripheral to the issue of disability nor merely cumulative, the error is not harmless. *See Moore v. Saul*, No. 3:20-CV-48-DPJ-MTP, 2021 WL 754833, at *2–3 (S.D. Miss. Feb. 26, 2021) (The ALJ adequately explained why he found Moore did not need a cane but provided no explanation for rejecting the treating physician's lifting limits, a material omission because the doctor's lifting limit would preclude the light work RFC assessed by the ALJ.)

Finally, in assessing whether an ALJ has provided an adequate analysis for rejecting or accepting an opinion, the court must look to the opinion as a whole, not only the part directly addressing the particular opinion. Other parts of the opinion may add to the ALJ's explanation. *Hubbard v. Commissioner of Social Security,* 2022 WL 196297  (N.D. Tex. January 21, 2022) (The ALJ's explanation for finding SAMC's opinions persuasive also provided an explanation for rejecting other experts' opinions.)

## DR. BUCK'S OPINION

Dr. Buck performed a consultative mental examination on Reddix and in part of her opinions found Reddix would likely be able to perform routine, repetitive task only inconsistently, a work-preclusive restriction.  Buck's report noted Reddix was cooperative, polite, and pleasant, with good eye contact.  He had obtained an associates degree in criminal justice. He reported stress related to the murder of his son a year earlier and the fact his son's murderer had never been apprehended. Reddix reported performing household chores, including sweeping, mopping, washing dishes and laundry, and cooking, though limited by his ability to stand for long periods. He also occasionally shopped for groceries.  He did not like to be around

other people, skipping his children's games because he feared crowds. One friend occasionally visited with him. Reddix reported occasional crying spells and occasional fatigue. He told Buck he took daily naps. The ALJ noted Buck found that Reddix "exhibited socially appropriate behavior, appropriate attentiveness, responsiveness, good eye contact, proper orientation, normal speech, normal language skills, normal thought processes, intact concentration, and normal psychomotor activity." R. 19. Buck noted his restricted affect, dysthymic mood and that he had fair judgment. Buck diagnosed Reddix as suffering from a major depressive disorder, an anxiety disorder, and opioid use disorder. Significantly Buck opined "the claimant could perform routine, repetitive task inconsistently secondary to sleep disturbance and fatigue." R. 24.

In addressing Buck's opinion, the ALJ found the opinion not "persuasive to the extent that it is inconsistent with and unsupported by the remaining record." R. 24. First, the ALJ clearly adopted much of Buck's opinions when he limited Reddix to occasional contact with supervisors, co-workers, and the general public. This is consistent with Buck finding Reddix would be fairly able to respond appropriately to supervisors and co-workers. Furthermore, the ALJ's acceptance of most of Buck's opinions is further demonstrated by his rejection of the report of a state agency medical consultant who had opined Reddix had no severe mental impairments.

What the ALJ rejected as not persuasive was Buck's work-preclusive opinion that Reddix would only be able to *inconsistently* handle routine, repetitive tasks, and offered the following explanation:

> For example, the record shows that the claimant rarely complained of either fatigue or sleep disturbance during the relevant time. In fact, the claimant primarily complained to social anxiety, avoidance of crowds, situational stressors, and bereavement related to the death of his son, and he received a diagnosis of general anxiety disorder. The claimant frequently presented to treatment visits with depressed or anxious mood. The claimant also had restricted affect during

his consultative examination, and he complained of occasional crying spells and social anxiety, even avoiding attending his children's games due to fear of crowds (ExhibitB3F ). However the claimant reported improved symptoms after starting work in July, 2021, including endorsing normal day-to-day functioning despite his impairments (Exhibit B10F). During his consultative examination the claimant was cooperative, polite, and pleasant with good eye contact, appropriate behavior, normal speech, normal language skills, and fair judgment.  He also reported that [he] occasionally shopped for groceries and had one friend that visited with his occasionally. R. 24.

The ALJ further buttressed his reasons for rejecting Buck's opinion when he noted, "the claimant reported improved symptoms after starting work in July 2021, including endorsing normal day-to-day functioning despite his impairments (Exhibit B10F)." R. 24.  The plaintiff has not pointed to any factual error in the ALJ's explanation, and the records do not show persistent complaints or treatment for sleep disorders or fatigue.  As was pointed out in oral argument, there is a single note in the record of a sleep disturbance and no record of treatment for the same during the relevant time frame. R. 497.

The ALJ adequately explained his rejection of Buck's work-preclusive restriction.

For example, during 2021, the claimant frequently had tenderness to the left knee, limited passive range of motion, and a slight limping gait to the left; however the claimant generally had normal motor strength, intact sensation, normal deep tendon reflexes, an intact sensation. The claimant had edema or swelling to the left knee during summer treatment visits, and no edema or swelling to the left during other treatment visits (Exhibits B1F, B4F, B5F, B6F and B7F). He also received an injection of Toradol to the left knee in January 2022 (Exhibit  B7F). R. 25-26.

## THE NURSE PRACTITIONER'S OPINION

The nurse practitioner's opinions were also discounted.  She opined Reddix could stand or walk less than two hours in an eight-hour workday, sit for less than two, rarely lift less than ten pounds; rarely stoop; and never twist, crouch, or climb.  She also thought he would be off-task 25% of the time due to pain and would miss four or more days per month secondary to symptoms and treatment.

7

The ALJ dismissed these opinions as inconsistent and unsupported by the remaining record. He explained his reasons as follows:

> For example, during 2021, the claimant frequently had tenderness to the left knee, limited passive range of motion, and a slight limping gait to the left; *however the claimant generally had normal motor strength, intact sensation, normal deep tendon reflexes, an intact sensation.* The claimant had edema or swelling to the left knee during summer treatment visits, *and no edema or swelling to the left during other treatment visits* (Exhibits B1F, B4F, B5F, B6F and B7F). He also received an injection of Toradol to the left knee in January 2022 (Exhibit B7F). R. 25-26. (Emphasis added).

The ALJ further noted that though Reddix continued to complain of pain in his left knee in 2022;

> Physical examinations appear largely unremarkable with normal ambulation, normal motor strength, and no tenderness, no edema, and no acute distress (Exhibits B5F, B6F and B9F). During his consultative mental examination, the claimant reported performing household chores including sweeping, mopping, washing dishes, washing laundry, cooking, and shopping for groceries, limited by his ability to stand for prolonged periods (Exhibit B3F). The record contains no objective evidence to support the severity of limitations obtained in this opinion. R. 25.

Furthermore, the ALJ accepted the opinions of the two SAMCs that Reddix could perform light work, based on the same underlying medical records, providing additional explanation for the rejection of the nurse practitioner's extreme restrictions.

Again, there is no claim of any factual error in the ALJ's explanation that would undermine it. Just comparing her medical report to the examination notes on the same date bears out the inconsistency of Thomas' report with her own records. The exam notes for the same date indicate Reddix was having no difficulties with concentration (R. 493), was able to ambulate normally and had normal muscle tone (R. 494), which is inconsistent with the restrictions in her report. Accordingly, the court finds the ALJ has provided an adequate explanation for his persuasiveness finding.

## CONCLUSION

After considering the matter, the court finds the ALJ provided factually accurate,

evidence-based, logical explanations for his persuasiveness determinations.  Finding no error,

**IT IS ORDERED** that the decision of the Commissioner is affirmed.

**SO ORDERED AND ADJUDGED** this the 17th day of April, 2024.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**

9